WEBSTER, RESPONDENT, v. SHERMAN, APPELLANT.

(No. 2,215.)

(Submitted January 18, 1906. Decided February 10, 1906.)

*Claim and Delivery—Live Stock—Husband and Wife—Sales— Presumptions—Crops—Instructions—Measure of Damages— Interest—Harmless Error—Third Party Claims—Evidence— Value of Property.*

Claim and Delivery—Husband and Wife—Live Stock—Sales.
1. Where, in an action in claim and delivery, it was shown that plaintiff, who had independent means of her own before marriage, bought certain live stock from her husband, together with the brand owned by him; that she purchased from other parties other cattle which she branded with the brand so acquired; that her husband thereafter used another brand; that plaintiff listed the property so purchased and paid taxes thereon; that it was generally known throughout the neighborhood that the brand bought by plaintiff and the stock bearing it belonged to her, and that after the sale the husband had nothing to do with the stock except to help care for it—the evidence was sufficient to show an immediate delivery and actual and continued change of possession of the property purchased by plaintiff from her husband, so as to constitute a valid sale as against the creditors of the husband.

Same—Personal Property—Sales—Husband and Wife—Presumptions.
2. *Quaere:* Is section 4491 of the Civil Code, relative to transfers of personal property conclusively presumed to be fraudulent, applicable to transfers between husband and wife?

Same—Crops—Ownership—Presumptions—Instructions.
3. Where, in an action in claim and delivery, it appeared that certain hay grown upon plaintiff's land had been seeded and harvested by her husband under an arrangement between them, an instruction to the effect that ownership of the land carries with it a *prima facie* presumption of ownership of the crops grown upon it correctly stated the law.

Same—Measure of Damages—Conversion.
4. *Semble:* It would seem that the action in claim and delivery, where the property in dispute has been sold and dissipated so that it cannot be returned, is analogous to the action in conversion, and that the rule relative to the measure of damages applicable in such latter action should be applied in the absence of a code definition of the measure of damages recoverable in the former.

Same—Damages—Detention—Interest.
5. In an action in claim and delivery, where all the evidence of value of the property seized was directed to the date of seizure and where it was not claimed that it had any usable value, the damages for detention should have been limited to interest on the amount recovered from the date of seizure to the time the verdict was returned; and to this interest plaintiff was entitled without any special finding to that effect.

Same—Husband and Wife—Exclusive Possession—Instructions—Harmless Error.

6. An instruction, in an action in claim and delivery, where there was not any proof or offer of proof that the creditors of plaintiff's husband had been dealing with the latter on the credit of the property claimed by plaintiff, which erroneously told the jury that her property could not be taken for the husband's debts unless it was in his sole and exclusive possession at the time it was seized by the sheriff, instead of at the time the attaching creditors dealt with him in good faith on the credit of it, could not have misled the jury, and was not reversible error.

Same—Husband and Wife—Third Party Claims—Instructions.

7. An instruction to the effect that, in order for a wife to maintain an action in claim and delivery for property taken for the debts of her husband, it was necessary that she should have made a third party claim, and presented to the sheriff an affidavit in support thereof, was erroneous.

Same—Conflicting Instructions—Third Party Claim—Harmless Error.

8. The giving of conflicting instructions, in an action in claim and delivery, upon the necessity of making a third party claim to the sheriff, one of which instructions correctly stated the law, while the other was erroneous but in appellant's favor, will not warrant a reversal.

Same—Instructions—Applicability to Evidence.

9. In an action of claim and delivery, an instruction that if a married woman allows her separate property to be so mixed with that of her husband as to become indistinguishable, or acquiesces in its being so mingled, it must, as to the husband's creditors, be treated as relinquished to him, was properly refused where there was no evidence of such mingling.

Same—Instructions—Equipoise in Evidence.

10. An instruction telling the jury, in an action in claim and delivery, that plaintiff must prove the allegations of her complaint by a preponderance of the evidence, was equivalent to saying that if there was not any preponderance in her favor, or if the evidence was evenly balanced, she could not prevail, and the refusal of the court to specially instruct that if the evidence was evenly balanced the jury should find for defendant, was not error.

Instructions—Refusal—When not Error.

11. The refusal of an instruction not applicable to the facts presented is not error.

Claim and Delivery—Instructions.

12. A requested instruction, in an action in claim and delivery, which stated that if the jury should find the evidence for and against any material allegation of plaintiff's complaint to be evenly balanced, then plaintiff had failed to prove her case and verdict should be for defendant, was misleading, where issues were made in the pleadings as to the ownership and value of the several items of property in question. The instruction would have been proper if it had said that the verdict should be for defendant *as to the property described in that allegation.*

Same—Value of Property—Evidence—Exclusion.

13. Where, in an action in claim and delivery, the verdict fixed the value of the property in controversy at the price put upon it by defendant sheriff in his testimony, he cannot be heard to complain of a ruling of the court excluding offered testimony tending to show the price at which it sold at sheriff's sale.

Same—Husband and Wife—Declarations—Evidence—Creditors.

14. Testimony of statements made by the husband of plaintiff, in an action in claim and delivery, to his creditors that the property in controversy belonged to him, was properly excluded, where it was not followed up by any proof or offer of proof that the attaching creditors dealt with the husband upon the credit of the property in question.

Same—Evidence—Letters—Creditors.

15. A letter written by the husband of plaintiff, in an action in claim and delivery, to his creditors, in which he had listed the property in dispute as his, was properly excluded, where it appeared that the purpose of the writer in inditing it and of the creditors in having it written was to enable the creditors to secure a loan for the writer from another bank.

*Appeal from District Court, Meagher County; W. R. C. Stewart, Judge.*

ACTION by Sadie A. Webster, against C. A. Sherman, Sheriff of Meagher county. Judgment for plaintiff. Defendant appeals from the judgment and an order denying him a new trial. Modified and affirmed.

*Mr. W. M. Johnston,* and *Mr. M. S. Gunn,* for Appellant.

At the time of the alleged sale, nothing whatever was done toward making a delivery of the cattle and horse, except to transfer the brand on the animals and have the same recorded in the name of the wife. This was insufficient to constitute a delivery or change of possession of the property. (*Harmon* v. *Hawkin,* 18 Mont. 525, 46 Pac. 439; *Story* v. *Cordell,* 13 Mont. 205, 33 Pac. 6; *Murphy* v. *Mulgrew,* 102 Cal. 547, 41 Am. St. Rep. 200, 36 Pac. 857; *O'Kane* v. *Whelan,* 124 Cal. 200, 71 Am. St. Rep. 42, 56 Pac. 880; *McKee* v. *Garcelon,* 60 Me. 165, 11 Am. Rep. 200; *Sweeney* v. *Coe,* 12 Colo. 485, 21 Pac. 705; *Autrey* v. *Bowen,* 7 Colo. App. 408, 43 Pac. 908; *Bassinger* v. *Spangler,* 9 Colo. 175, 10 Pac. 809; *Walden* v. *Murdock,* 23 Cal. 540, 83 Am. Dec. 135.) A delivery in the year 1903 was not such an immediate delivery as is necessary to a valid sale. If the property had actually been delivered in the year 1903, it would, nevertheless, have been subject to seizure for an indebtedness against the husband. (*Watson* v. *Rodgers,* 53 Cal. 401; *Autrey*

v. *Bowen,* 7 Colo. App. 408, 43 Pac. 908.) If it should be considered that because the wife was residing on the ranch with her husband they were jointly in possession of the property, the sale would still be invalid, because the statute does not permit a joint or concurrent possession in both the vendor and vendee. (*Bassinger* v. *Spangler, supra; Wheeler* v. *Selden,* 63 Vt. 429, 25 Am. St. Rep. 771, 21 Atl. 615, 12 L. R. A. 600.) The good faith of the parties is immaterial if there was no immediate delivery and actual and continued change of possession. (*Bassinger* v. *Spangler, supra; Lawrence* v. *Burnham,* 4 Nev. 361, 97 Am. Dec. 540.) There is no statute making the record of a brand notice of ownership of animals bearing the brand. If, however, such a statute existed, the recording of the brand would not take the place of a delivery or constitute a change of possession of the animals. (*Murphy* v. *Mulgrew,* 102 Cal. 547, 41 Am. St. Rep. 200, 36 Pac. 857.) The fact that the cattle and horse were branded with a brand recorded in the name of the plaintiff was not implied notice of her ownership of the animals. (*Stewart* v. *Hunter,* 16 Or. 62, 8 Am. St. Rep. 267, 16 Pac. 876.) Evidence tending to show that it was generally known among the neighbors that the plaintiff had become the owner of the property in question, is wholly immaterial, for if there was not a delivery and an actual and continued change of possession, the sale would be invalid as to the creditors of the husband, although they had actual knowledge of the sale. (*Harkness* v. *Smith,* 3 Idaho, 221, 28 Pac. 423.) The question of what constitutes a delivery is a question of law. (*Vance* v. *Boynton,* 8 Cal. 555.)

Plaintiff was not the owner of the hay described in her complaint, but the same belonged to her husband. (See *Skinner* v. *Skinner,* 38 Neb. 756, 57 N. W. 534; *Estate of Hauer,* 140 Pa. St. 420, 23 Am. St. Rep. 245; *St. Louis Ry. Co.* v. *Hall,* 71 Ark. 302, 74 S. W. 294; *Lyon* v. *Green Bay etc. Ry. Co.,* 42 Wis. 548; *Sharp* v. *Wood,* 21 Ky. Law Rep. 189, 51 S. W. 15; *Elijah* v. *Taylor,* 37 Ill. 247.) The mere proof of ownership of the land was insufficient to raise a presumption of ownership of the

crop in the light of the other evidence. (*Estate of Hauer,* 140 Pa. St. 420, 23 Am. St. Rep. 245, 21 Atl. 445; *Elijah* v. *Taylor,* 37 Ill. 247; *Sharp* v. *Wood,* 21 Ky. Law Rep. 189, 51 S. W. 15.) The hay and cattle not having any usable value, and no claim being made for the loss of the use of the horses, buggy and harness, damages for the detention should have been measured by the interest on the value of the property. (Cobbey on Replevin, 2d ed., sec. 855; *State Bank of Stockton* v. *Showers,* 65 Kan. 431, 70 Pac. 332; *Hall* v. *Tillman,* 110 N. C. 220, 14 S. E. 745; *Allen* v. *Fox,* 51 N. Y. 562, 10 Am. Rep. 641; *Austin* v. *Terry,* 13 Colo. App. 141, 56 Pac. 810; *Biglow* v. *Doolittle,* 36 Wis. 115; *Webb* v̇. *Phillips,* 80 Fed. 954, 26 C. C. A. 272.)

It is improper for a witness to express his opinion as to the amount of the damages. (*St. Louis Ry. Co.* v. *Hall,* 71 Ark. 302, 74 S. W. 293; 2 Sedgwick on Damages, 7th, ed., 633; *St. Louis etc. Ry. Co.* v. *Jones,* 59 Ark. 105, 26 S. W. 595; *Norman* v. *Wells,* 17 Wend. 136.)

*Messrs. Hartman & Hartman,* and *Mr. N. B. Smith,* for Respondent.

Whether there was a delivery and actual and continued change of possession is or may be a question of mixed law and fact. (*Dodge* v. *Jones,* 7 Mont. 121-127, 14 Pac. 707.) But when the facts constituting such delivery and change of possession are undisputed, whether or not the requirements of the statute have been complied with is a question of law for the court. (*Dodge* v. *Jones,* 7 Mont. 121-135, 14 Pac. 707; *Cady* v. *Zimmerman,* 20 Mont. 225, 228, 230, 50 Pac. 553.) The witnesses all stated the various facts upon which they based the amount of damages, and then stated the amount which in their judgment plaintiff would be damaged by the detention of the property. The witnesses having been subjected to severe cross-examination, it is well settled that this was a proper method of proving damages. (*Carron* v. *Wood,* 10 Mont. 500, 508, 26 Pac. 388; *Gallatin Canal Co.* v. *Lay,* 10 Mont. 528-532, 26 Pac.

1001; *Holland* v. *Huston,* 20 Mont. 84, 49 Pac. 390; *Montana Ry. Co.* v. *Warren,* 6 Mont. 275, 12 Pac. 641.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This is an action in claim and delivery, brought by Sadie A. Webster against the sheriff of Meagher county, to recover the possession of certain personal property alleged to have been wrongfully taken and detained by the defendant, or to recover its value, alleged to be $4,185, in case recovery of the possession could not be had, and for $500 damages for the wrongful detention of the property. The property consisted of stock cattle, horses, some hay, a buggy, and a single harness. The answer denies that the plaintiff was ever the owner or entitled to the possession of the property. The prices fixed in the complaint for the various items of property are disputed, except as to the buggy, harness, and two horses; and in the answer prices are fixed for the various items which, with the admissions referred to, place the total valuation of the property at $2,570. The answer admits that the hay was worth $1,410, and fixes the value at $7 per ton, which is an admission that two hundred and one and three-sevenths tons were seized. The answer seeks to justify the seizure by alleging that the property was all the property of Frank S. Webster, and was seized under attachment and execution issued in an action wherein Alexander & Hopkins, copartners doing business under the firm name of Merchants' Bank of Forsyth, were plaintiffs, and Frank S. Webster was defendant.

The answer further alleges that Frank S. Webster and the plaintiff are husband and wife; that plaintiff never filed an inventory of her separate property; that all the property in controversy was continuously for a long time prior to the seizure in the sole and exclusive possession of Frank S. Webster, and that Alexander & Hopkins extended credit to Frank S. Webster for the debt sued upon in good faith on the credit of all this property being the property of Frank S. Webster, and upon the representations of Frank S. Webster that such property was his;

and that these representations were made with the knowledge and consent of plaintiff, Sadie A. Webster; and finally it is alleged that Alexander & Hopkins had no knowledge or notice that Sadie A. Webster claimed or owned the property in controversy. All these allegations are put in issue by reply, except the allegations that the plaintiff is the wife of Frank S. Webster, and that she never filed an inventory of her separate property.

The cause was tried to the district court sitting with a jury. The jury returned a verdict in favor of the plaintiff for the return of the property, or for its value in case return could not be had, as follows: Fifty-four head of cattle, of the value of $1,350; three head of horses of the value of $115; the buggy, of the value of $15; the single harness, of the value of $5; and two hundred and one and three-sevenths tons of hay, of the value of $1,410; and for $250 damages for the detention of the property. As the evidence was all with respect to fifty head of cattle only, the plaintiff remitted from the amount of the verdict four head of cattle, or $100, the value thereof, and judgment was rendered and entered on the verdict as thus amended; and from this judgment and an order denying him a new trial defendant appealed.

It appears from the evidence that certain of the cattle and one horse were purchased by the plaintiff from her husband, Frank S. Webster. Appellant specifies as error (1) the refusal of the trial court to grant a new trial, for the reason that the evidence is insufficient (a) to show any immediate delivery and actual and continued change of possession of the property purchased by plaintiff from her husband, (b) to show that plaintiff owned the hay in controversy, and (c) to sustain the verdict for $250 damages; (2) the giving of certain instructions asked by the plaintiff, and the refusal to give certain instructions asked by defendant; and (3) the admission of certain testimony offered by the plaintiff, and the refusal of certain testimony offered by the defendant.

1. (a) The answer does not allege any fraud in fact in the transaction between the plaintiff and her husband respecting

the purchase of the property which she did purchase from him in October, 1901. Defendant, however, relies upon the proposition that the evidence is insufficient to show an immediate delivery and actual and continued change of possession and therefore the transaction was fraudulent in law under section 4491 of the Civil Code, and in support of this cites *Harmon* v. *Hawkins*, 18 Mont. 525, 46 Pac. 439, *Story* v. *Cordell*, 13 Mont. 204, 33 Pac. 6, and cases from other courts.

The evidence shows that in October, 1901, the plaintiff, who had independent means of her own at the time of her marriage with Frank S. Webster, purchased from him eleven head of adult cattle, ten calves, and a stallion, for $392.65; that the stallion and these cattle and the increase of the cattle were a portion of the property seized by the sheriff in this instance; that the animals so purchased were branded with an ''angle R'' brand, and were all the animals owned by Frank S. Webster branded with that brand; that he sold to the plaintiff his brand, which had been recorded, and that the plaintiff caused the recorder of marks and brands to make the proper transfer of the same to her; that she purchased from another party other live stock upon which she placed this same brand; and that thereafter Frank S. Webster used a ''6 U quarter circle'' brand. The evidence shows that the plaintiff owns one hundred and twenty acres of land, a desert entry; that Frank S. Webster has a homestead of one hundred and sixty acres; that these two tracts of land, together with about twenty-five sections of railroad land, were inclosed together. Respecting the railroad land the plaintiff testified: ''The railroad land was mine.'' The evidence also shows that the animals purchased from Frank S. Webster, together with other personal property belonging to the plaintiff, were kept upon this ranch upon which the plaintiff and her husband, Frank S. Webster, resided; that plaintiff listed this property for taxation and paid the taxes thereon for 1903; that it was generally known throughout the neighborhood that the ''angle R'' brand and the stock bearing it belonged to the plaintiff, Sadie A. Webster; and that after the sale Frank S. Webster

had nothing whatever to do with this stock, except to help care for it for Sadie A. Webster.

The court instructed the jury that if they believed from the evidence the facts detailed, and that the sale was made in good faith, without any fraudulent intent, they should then find that this was such an immediate delivery and actual and continued change of possession as would constitute the sale a valid one as against the creditors of Frank S. Webster.

The case of *Harmon* v. *Hawkins,* relied upon by appellant, was one in conversion, and upon appeal to this court the only question presented was whether the complaint stated a cause of action. The plaintiff had assumed to deraign his title to the property in controversy in that case, and to set forth in his complaint all the facts regarding the same. This court held that the complaint was insufficient, in that it failed to allege any delivery whatever of the property to the plaintiff Harmon, or any change of possession at the time he purchased.

In *Story* v. *Cordell,* this court merely held that the bill of sale given by Cordell to Story & Co. amounted, in fact, to a chattel mortgage, and was void as failing to comply with the law respecting mortgages of personal property.

Since those decisions were rendered, this court has had occasion to consider section 4491 above, and to review the decisions in those cases. In *Cady* v. *Zimmerman et al.,* 20 Mont. 225, 50 Pac. 553, this court went quite fully into the question now presented, and there approved the doctrine announced in the early case of *Dodge* v. *Jones,* 7 Mont. 121, 14 Pac. 707, and in *Porter* v. *Bucher,* 98 Cal. 454, 33 Pac. 335, and quoted with approval from the decision in the *Dodge Case,* as follows: "No particular act or formal ceremony is necessary to make a delivery in law. Any act done, coupled with the intent to change the ownership, which has the effect to transfer the dominion over the thing ·sold to the buyer, is a delivery. Any small chattel capable of being handled may be delivered by handing it to the buyer, as selling goods across the counter in a store; but horses are not capable of this manual kind of delivery. We think

when the bar was branded under the 'K,' so that the appellant's horses could be distinguished from those of the Kirkpatricks, and they were turned out on the same range, those acts were done with the intent to transfer the ownership and dominion over these horses to the appellant.''

Thus far we have proceeded upon the assumption that section 4491 above is applicable to a transfer of personal property between husband and wife; but it is at least a serious question whether it has such application. Under its provisions any creditor of the vendor can raise the question of the want of immediate delivery or actual and continued change of possession of the property sold; but, if the transaction be between husband and wife, may the rule not be altogether different? If the sale was sufficient to pass title from the husband to the wife, as between themselves, the property actually becomes the separate property of the wife, and, under section 227 of the Civil Code, cannot be held ''liable for the debts of the husband unless such property is in the sole and exclusive possession of the husband, and then only to such persons as deal with the husband in good faith on the credit of such property without knowledge or notice that the property belongs to the wife.'' Under this section these inquiries are pertinent: Did the husband have the sole and exclusive possession of the property? Did the creditor deal with the husband in good faith on the credit of the property? And, finally, did the creditor have any knowledge of the wife's ownership of the property? Under section 4491 above, not any of these inquiries would be material.

In *Crawford* v. *Davis,* 99 Pa. St. 576, it is said: ''In the determination of the question as to the kind of possession necessary to be given (in order to make a sale of personal property valid as against creditors) regard must be had, not only to the character of the property, but also to the nature of the transaction, the position of the parties, and the intended use of the property.'' This is quoted with approval in *Porter* v. *Bucher* above, and to it is added: ''The law only requires that which could naturally be done in an honest and business-like transac-

tion, where there was no thought of fraud or concealment.''
The facts in *Crawford* v. *Davis* and in *Porter* v. *Bucher* are
almost identical with those in the case at bar; and, if the facts
disclosed in those cases and in the case of *Dodge* v. *Jones* above
will support a finding of a sufficient delivery and actual and
continued change of possession to satisfy the law, it is clear
that they do so in this instance.

The law does not require the plaintiff to abandon her own
home and the use of her own real estate, or desert her husband,
in order to hold property in her own name free from the claims
of her husband's creditors, even though she purchased it from
him.    It is difficult to understand just what more could have
been expected of her under the circumstances; for she appears
to have done everything which could have been done, regard
being had to the nature of the property, its intended use, and
the situation and relation of herself and her husband.

(b) The hay in controversy was grown upon plaintiff's desert
claim.    It was seeded and harvested by the husband under some
kind of an arrangement between them.    The court instructed
the jury that the ownership of the land carries with it a *prima
facie* presumption that such owner is likewise the owner of the
crops grown upon the land.    We think this correctly states the
rule.    (12 Cyc. 976; *Ellestad* v. *Northwestern Elevator Co.*, 6
N. Dak. 88, 69 N. W. 44.)    Of course, that presumption is a
disputable one, and it was so explained to the jury by the court
in making a direct application of the rule to the case at bar.
We think the court properly submitted to the jury the question
whether or not there was any arrangement between the plain-
tiff and her husband under which the title to the hay grown
upon plaintiff's land should vest in her husband, and thereby
overcome the presumption announced in the rule above.

(c) Upon the trial plaintiff offered evidence to prove her gen-
eral damages which she claimed to have sustained by reason
of the wrongful detention of her property by the defendant.
The evidence consisted of opinions of witnesses given in response
to the following question: ''Q. Assuming that there were fifty

adult cattle, with their calves, owned by the plaintiff and run upon that ranch on the 22d of August, 1903, which had been all raised upon the ranch, and which constituted her stock or bunch of stock cattle and her cattle business, and they were taken from her, taken away from her at that time, and she had plenty of feed to feed them through the winter, and were detained from her up until the present time so as to prevent her going on with her stock business, what would you say she was damaged by reason of the taking and detention of those cattle?''

The property in controversy was seized by the sheriff on August 22, 1903. This action was commenced on October 10th of the same year, and the property so seized was sold under execution on December 22d following. The cause was tried in June, 1904, so that at the time of the trial it was apparent that, as the property had been sold and dissipated, it could not be returned, and that, if plaintiff prevailed, she would be left to the alternative of accepting such sum of money as the value of the property as might be returned by the jury, together with damages for the wrongful taking and detention of the same. Our Code does not define the measure of damages in a case of this character; but, upon reason, it would appear to be analogous to the action in conversion, and that the rule applicable in such an action should be applied.

Section 4333 of the Civil Code prescribes the rule for ascertaining damages in a case of conversion, as follows: ''The detriment caused by the wrongful conversion of personal property is presumed to be: (1) The value of the property at the time of its conversion, with the interest from that time; or, where the action has been prosecuted with reasonable diligence, the highest market value of the property at any time between the conversion and the verdict, without interest, at the option of the injured party.  *   *   *  '' All the evidence of value was directed to the date of seizure of the property, and, in our opinion, the damages for detention should have been limited to interest on the amount recovered from the date of seizure of the property to the time the verdict was returned. This appears to be the

view of text-writers and courts. (2 Cobbey on Replevin, sec. 855, and cases cited; *Kelly* v. *McKibben*, 54 Cal. 192; *Schmidt* v. *Nunan*, 63 Cal. 371; *State Bank* v. *Showers*, 65 Kan. 431, 70 Pac. 332.) And to this interest plaintiff was entitled without any special finding to that effect. It is to be observed that there are no allegations of special damages in the complaint. It is not claimed that any of the property had a usable value. The difference between the damages allowed by the jury for the detention and interest on the value of the property fixed by the jury from the time of its seizure to the date of the verdict is $66.75.

2. The district court gave instructions 7 and 18, which in effect told the jury that, if they believed from the evidence that the property was the property of the plaintiff, it could not then be taken for her husband's debts, unless such property was in the sole and exclusive possession of her husband at the time it was seized by the sheriff, and that Alexander & Hopkins dealt with Frank S. Webster in good faith on the credit of the property. Appellant contends that these instructions are erroneous in referring to the time the property was seized by the sheriff, instead of the time Alexander & Hopkins extended credit to Frank S. Webster. The criticism is just; but the court would have been fully justified in not giving any instruction upon the subject at all, for there was no proof whatever, and no offer of proof, that Alexander & Hopkins dealt with Webster on the credit of this property. The instructions, therefore, were upon an entirely immaterial matter, and could not have misled the jury. Under the decisions of this court in *Thornton-Thomas Merc. Co.* v. *Bretherton*, 32 Mont. 80, 80 Pac. 10, and *Robinson* v. *Mills*, 25 Mont. 391, 65 Pac. 114, the error is not a reversible one.

The court also gave instructions 9 and 20, which are conflicting. In No. 9 the court told the jury that the plaintiff in this action could not prevail unless it appeared that she had made a third party claim and presented to the sheriff an affidavit in support thereof; and in No. 20 the court in effect said to the jury that it was not necessary for the plaintiff to make such

claim in order to maintain her action.    Instruction No. 20, of
course, correctly states the law, and instruction No. 9 is errone-
ous; but the error is altogether in the defendant's favor, and
therefore a mere conflict in the instructions will not warrant a
reversal.    (*State* v. *Jones,* 32 Mont. 442, 80 Pac. 1095; *Robinson*
v. *Mills,* above; *Thornton-Thomas Merc. Co.* v. *Bretherton,*
above.)    This consideration of the instructions given disposes
of the questions presented by the instructions which were re-
fused, which relate to the same subjects.

The court was asked by defendant to instruct the jury that if
a married woman willingly allows her separate property to be so
mixed into a common mass with that of her husband so as to
become indistinguishable, or if she acquiesces in its being so
mingled, it must, as to the husband's creditors, be treated as re-
linquished to the husband.    While this may be a correct state-
ment of an abstract proposition of law, it was not applicable
to this case; for there was no proof whatever of any such ming-
ling or mixing of the property of plaintiff and that of her hus-
band.

The court instructed the jury that it was incumbent upon the
plaintiff to prove the allegations of her complaint which were
not admitted by a preponderance of the evidence.    The defend-
ant then asked the court to give an instruction which properly
defines "preponderance of the evidence," but which adds this
sentence: "If, after a comparison and consideration of all the
evidence in this action, you find the evidence for and against
any material allegation of plaintiff's complaint to be evenly bal-
anced, then plaintiff has failed to prove her case, and your ver-
dict should be for the defendant."    When the court told the jury
that the plaintiff must prove the allegations of her complaint by
a preponderance of the evidence, this was, in effect, saying that
if there was not any preponderance in her favor, or if the evi-
dence was evenly balanced, the plaintiff could not prevail.
(*Harper* v. *State,* 101 Ind. 109.)    However, the sentence quoted
above renders the instruction asked erroneous or likely to mis-
lead the jury.    A material allegation of plaintiff's complaint is

that she was the owner of four cows, of the value of $35 a head; but the mere fact that the evidence with relation to this particular allegation might be evenly balanced would not defeat her entire cause of action. And this is particularly pertinent here, where issues are made by the pleadings as to the ownership and value of the several items of property. The instruction asked for should have said, after reciting the facts: "Then your verdict should be for the defendant *as to the property described in that allegation.*"

3. The defendant sought to show the price for which the cattle in controversy sold at the sheriff's sale, but the court excluded the offered testimony. However, the verdict rendered by the jury fixes the value of the cattle exactly at the price put upon them by the defendant himself in his testimony, and therefore he cannot complain of this ruling.

Frank S. Webster was a witness for the plaintiff, and upon his cross-examination he was asked if on or about July 15, 1902, at Forsyth, Montana, he had not made a statement to Mr. Terrett, the cashier of the Merchants' Bank of Forsyth, that all the cattle on his ranch, including those now claimed by the wife, belonged to him, or words to that effect; and a like effort was made to prove the same by the witness Terrett, a witness for the defendant. It was also sought to show that Frank S. Webster had written a letter to the bank in which he listed the property now claimed by his wife as his property. All this offered testimony was excluded.

The connection in which the evidence was offered discloses that the purpose in offering it was to show that Frank S. Webster held out to Alexander & Hopkins that this property was his, for the purpose of obtaining credit for the moneys for which Alexander & Hopkins had sued him and had attached the property in controversy, and that it was offered for no other purpose. We think there was no prejudicial error in the court's ruling, as it was not followed up by any proof or offer of proof that Alexander & Hopkins dealt with Frank S. Webster upon the credit of the property. It was entirely immaterial what pur-

pose Frank S. Webster had in making those representations, if he did in fact make them. If this property belonged to the plaintiff, it could not be seized for the debt of Frank S. Webster, unless at the time the debt was contracted the property was in the sole and exclusive possession of Frank S. Webster, and Alexander & Hopkins extended credit to him upon the belief in good faith that the property did belong to him, and without any knowledge of the wife's claim of ownership. So far at least as the letter was concerned, the testimony would seem to indicate that the purpose of Webster in writing it, and of Alexander & Hopkins in having it written, was to enable Alexander & Hopkins to secure a loan for Webster from a bank in Omaha; for Alexander, who was a witness for the defendant, testified that the last he knew of the letter he sent it to Omaha, to the cashier of the South Omaha National Bank, and said: "The purpose in sending this letter to Omaha was to get a loan for Frank S. Webster."

The order denying defendant a new trial is affirmed. The cause is remanded to the district court, with directions to modify the judgment by reducing the amount thereof $66.75, and, when so modified, it will be affirmed.

*Modified and affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE MILBURN concur.