LUNDQUIST, Respondent; *v.* JENNISON et al., Appellants.

(No. 5,063.)

(Submitted March 3, 1923. Decided March 22, 1923.)

[214 Pac. 67.]

*Sales—Seed Wheat—Breach of Express Warranty—Measure of Damages—Evidence of Other Sales—Admissibility.*

Sales—Express Warranty—What may Constitute.
    1. Where a dealer sells an article of a particular description, designating it by name, the identity of which is not known to the buyer and who relies upon the representation thus made, an express warranty results.

Same—Express Warranty—Form.
    2. No particular form of words is essential to constitute an express warranty upon the sale of personal property.

Same—Seed Wheat—Breach of Warranty.
    3. Under the above rules, *held* that where defendant dealer without reservation stated that wheat bought by plaintiff was blue-stem seed wheat, the latter stating that he would "take his word for it," the transaction constituted an express warranty, rendering defendant liable in damages for breach thereof.

Same—Seed Wheat—Breach of Warranty—Measure of Damages.
    4. The measure of damages in an action for breach of warranty of seed wheat where the crop was a total failure, is the purchase price, a reasonable rental value of the land upon which it was sown, for one year; the reasonable value of the time and labor expended in

---

    1. Express or implied warranty on sale of seed, see notes in **Ann. Cas.** 1918B, 72; **Ann. Cas.** 1918E, 485; 37 **L. R. A.** (n. s.) 79; **L. R. A.** 1916C, 1012; 16 **A. L. R.** 859.

cultivating and preparing the soil and sowing the seed, and the reasonable value of hauling the seed from the place of purchase to the lands where sown.

Appeal and Error—Objection to Instruction not Pointed Out at Settlement—Review.

5. Under section 9349, Revised Codes of 1921, the district court is precluded from granting a new trial for error in an instruction not specifically pointed out at the time of settlement of the instructions, and on appeal the supreme court will not consider any error not so pointed out.

Sales—Seed Wheat—Admissibility of Evidence of Other Sales.

6. Where, in an action for breach of warranty of seed wheat, the complaint alleged and the answer denied that defendants were engaged in buying and selling seed grain as incidental to their milling business, and defendants' general manager testified that defendants did not keep seed wheat for sale, and that the only wheat they had was ordinary elevator wheat, it was competent for plaintiff to prove that they had sold seed wheat to other persons; proof of the fact that defendants were selling seed wheat generally having a tendency to support plaintiff's contention that they had sold such wheat to him.

*Appeals from District Court, Roosevelt County; C. E. Comer, Judge.*

ACTION by John Lundquist against C. W. Jennison and others, doing business under the firm name and style of the Jennison Mills Company. Judgment for plaintiff, and defendants appeal from the judgment and from an order overruling motion for new trial. Affirmed.

*Mr. John A. Bird, Mr. John Hurly* and *Messrs. Craven & Converse,* for Appellants, submitted a brief; *Mr. John M. Kline,* of Counsel, argued the cause orally.

There was no warranty. The purchase was on inspection of an article of which the vendor's means of knowledge was no greater than those of the vendee. The language of the law is *caveat emptor.* Such is the rule adopted by this court in *Kircher* v. *Conrad,* 9 Mont. 191, 7 L. R. A. 471, 23 Pac. 74; see, also, *Lord* v. *Grow,* 39 Pa. St. 88, 80 Am. Dec. 504; *Shisler* v. *Baxter,* 109 Pa. St. 443, 58 Am. Rep. 738; *Horn* v. *Elgin Warehouse Company,* 96 Or. 403, 190 Pac. 151; *Barnard* v. *Kellogg,* 10 Wall. (U. S.) 383, 19 L. Ed. 987 [see, also, Rose's U. S. Notes]; In *Chandelor* v. *Lopus,* Cr. Jac. 4, 15 Morr.

Min. Rep. 70; *Calhoon* v. *Brinker,* 17 Ohio Dec. 705; *Seixas* v. *Wood,* 2 Caines (N. Y.), 48, 2 Am. Dec. 215; *Swett* v. *Colgate,* 20 Johns. (N. Y.), 196, 11 Am. Dec. 266 (sale of article described as barilla, which in fact was not barilla, sample inspected by purchaser); *Parkinson* v. *Lee,* 2 East, 314, 6 Rev. Rep. 429; *Hargous* v. *Stone,* 5 N. Y. 73; *Wetherill* v. *Neilson,* 20 Pa. St. 448, 59 Am. Dec. 741.

Measure of Damages. That proposed instruction No. 4 was the correct rule is clearly established by the following decisions: *Page* v. *Pavey,* 8 Car. & P. 769; *Randall* v. *Raper,* El. Bl. & E. 84; *Van Wyck* v. *Allen,* 69 N. Y. 61, 25 Am. Rep. 136; *Cline* v. *Mock,* 150 Mo. App. 431, 131 S. W. 710; *Fuhrman* v. *Interior Warehouse Co.,* 64 Wash. 159, 37 L. R. A. (n. s.) 89, 116 Pac. 666; *Depew* v. *Peck Hardware Co.,* 197 N. Y. 528, 121 App. Div. 28, 105 N. Y. Supp. 390, 90 N. E. 1158; *Schutt* v. *Baker,* 9 Hun (N. Y.), 556; *Crutcher & Co.* v. *Elliott,* 13 Ky. Law Rep. 592.

*Mr. Alfred Vollum* and *Mr. Grant Bakewell,* for Respondent, submitted a brief; *Mr. Bakewell* argued the cause orally.

There was an expressed warranty. (*Keller* v. *Green,* 51 Mont. 42, 149 Pac. 286; *Hoffman* v. *Dixon,* 105 Wis. 315, 76 Am. St. Rep. 914, 81 N. W. 491; *Austin* v. *Nickerson,* 21 Wis. 542; *Cotzhausen* v. *Simon,* 47 Wis. 103, 1 N. W. 473; *White* v. *Stelloh,* 74 Wis. 435, 43 N. W. 99; Benjamin on Sales, 6th ed., pp. 623, 625; Hill on Sales, 237; 30 Am. & Eng. Ency. of Law, 2d ed., 136, 137; 24 R. C. L. 171, 172; *Johnson* v. *Foley Milling & Elevator Co.,* 147 Minn. 34, 179 N. W. 488.) The measure of damages adopted was correct. This court has passed upon this question in a case where the pleadings, the evidence, and the instructions given by the trial court are almost identical, and in its last utterance on the subject has held that the measure of damages adopted in the instant case is the correct rule,—*Keeler* v. *Green,* 51 Mont. 42, 149 Pac. 286. Text-writers so far as they meet the question at all join in approval of the measure adopted

by the trial court, in the case at bar, when the failure of the crop is entire. (Sedgwick on Damages, 9th ed., pp. 191, 768; 30 Am. & Eng. Ency. of Law, 2d ed., 219; 35 Cyc. 479; *Reiger* v. *Worth*, 127 N. C. 230, 80 Am. St. Rep. 798, 52 L. R. A. 362, 37 S. E. 217; *Vaughan's Seed Store* v. *Stringfellow*, 56 Fla. 708, 48 South. 410; *Butler* v. *Moore*, 68 Ga. 780, 45 Am. Rep. 508, Ann. Cas. 1918B, 84; 24 R. C. L. 264; *Totten* v. *Stevenson*, 29 S. D. 71, 135 N. W. 715; *Crutcher* v. *Elliott*, 13 Ky. Law Rep. 592; *Moorhead* v. *Minneapolis Seed Co.*, 139 Minn. 11, 165 N. W. 484.)

MR. JUSTICE STARK delivered the opinion of the court.

This action was brought by plaintiff to recover damages from defendants for an alleged breach of warranty of 650 bushels of seed wheat which he purchased from them in the spring of 1919. In his complaint he alleges that the defendants represented and warranted the wheat "to be a good grade of bluestem spring seed wheat"; that he accepted, received and paid for the wheat, trusting and believing in the representations and warranties so made; that it was purchased for the sole purpose of sowing the same in the spring of 1919 and raising a crop of spring wheat, which purpose was at all times known to the defendants; that plaintiff properly cleaned and sowed the same in due season; that the seed so purchased was not in fact spring wheat, but was winter wheat, and by reason thereof no crop matured; that he received no benefit therefrom; and that his crops were worthless and of no value whatever to him.

Defendants by answer admitted the sale of the wheat to plaintiff, but denied the other allegations of the complaint. Upon a trial of the issues before a jury a verdict was rendered in favor of the plaintiff, upon which judgment was entered on February 16, 1921. Motion for new trial was made and overruled. The case is before this court on appeals from the judgment and order overruling the motion for a new trial.

Defendants in their brief set out twenty-seven specifications of error, which, however, logically fall into three groups and present but three questions for determination.

1. It is claimed by defendants that the testimony was not [1] sufficient to justify a finding that at the time they sold the seed to plaintiff they warranted that it was blue stem spring seed wheat. In connection with this proposition the facts disclosed by the testimony are that in the spring of 1919 the plaintiff was engaged in extensive farming operations in the vicinity of Bainville, and that the defendants were engaged in the milling business at that place, and incidental thereto the buying and selling of grains. Plaintiff had contracted with them for the purchase of a large quantity of Marquis wheat for spring seeding purposes. After a portion of this quantity had been delivered to plaintiff, he met R. H. Sannon, the defendants' general manager, on the street in Bainville, and had a conversation with him, plaintiff's version of which can best be stated in the form of a dialogue, as follows:

"Sannan: Do you need any more seed wheat down at your ranch?

"Lundquist: Yes.

"Sannan: I just got in some nice bluestem wheat.

"Lundquist: That is just what I am looking for. I want bluestem wheat to sow on my spring plowing. How much have you got?

"Sannan: I got plenty.

"Lundquist: I want at least 500 bushels.

"Sannan: All right, but I will have to charge you a little more for it than I charged you for the first that you ordered.

"Lundquist: How much more?

"Sannan: I will have to charge you $2.75 per bushel for it.

"Lundquist: That is an awful price, but I have got to have seed wheat.

"Sannan: It is good wheat, fine seed wheat. I can mill the Marquis wheat instead of the bluestem and give you all the bluestem you want.

"Lundquist: All right, then; when my men come in for more wheat give them the bluestem instead of Marquis.

"Sannan: All right.

"Lundquist: I won't have time to go down and see it, but it is good wheat, fine wheat?

"Sannan: It is a specially good lot of bluestem wheat.

"Lundquist: I will take your word for it. If you want any money before I come back, you go over to the Farmers' State Bank to Mr. Powers, and he will pay you for it.

"Sannan: It will be all right."

Sannan, called as a witness for defendants, gave his version of this conversation and said he told plaintiff that defendants had just got in a nice car of wheat which he thought was bluestem; that plaintiff inquired whether it was the long kernel wheat, and, upon being informed that it was, said: "Well, then, it is bluestem; I would rather have that in preference to what has been contracted for," to which Sannan replied it was all right; that it would not make any difference what wheat he took.

Did the defendants, under the circumstances above detailed, warrant that the wheat was bluestem spring seed wheat?

It is the general rule that no particular form of words is [2, 3] essential to constitute an express warranty upon the sale of personal property. In the case of *Hoffman* v. *Dixon,* 105 Wis. 315, 76 Am. St. Rep. 916, 81 N. W. 491, the plaintiff, a farmer, applied to the defendant, a country merchant who kept seed for sale, to buy some rape seed. On inquiry defendant's clerk informed plaintiff he had rape seed for sale. Plaintiff agreed to take twenty-five bushels. The seed was weighed out in plaintiff's presence. The plaintiff bought in reliance on the fact that it was shown to him by the clerk and sold as rape seed. The seed was sown and turned out

to be wild mustard seed. Plaintiff brought an action for damages against the merchant and had judgment in the lower court, which was sustained on appeal. After reviewing the law as applicable to the facts in the case, the court said: "In such a case the doctrine of implied warranty does not apply, but the doctrine of express warranty does. No particular form of expression or words is necessary to make an express contract of warranty. The word 'warranty' is not necessary to it. An affirmation of the facts as to the kind or quality of an article offered for sale, of which the vendee is ignorant, but upon which he relies in purchasing such article, is as much a binding contract of warranty as a formal agreement using the plainest and most unequivocal language on the subject."

In 24 R. C. L. 171, it is said: "It seems to be generally held that, where an article is sold by descriptive name, well understood as designating a commodity of a particular kind or character, this is, if relied on by the buyer, a warranty that the article is of a specified kind or character. And this is held true especially in the more modern cases where the sale is of goods by a particular description as to quality or condition. A warranty of this kind, though sometimes spoken of as an implied warranty, falls properly within the class known as express warranty."

In the case of *Johnson* v. *Foley Milling & Elevator Co.,* 147 Minn. 34, 16 A. L. R. 856, 179 N. W. 488, the plaintiff, a farmer, had purchased seed wheat from the defendant which the defendant had represented as genuine Marquis wheat. Relying on this statement, the plaintiff sowed it on his farm and it turned out to be a bearded variety of inferior quality. Plaintiff brought suit for damages and prevailed in the lower court. On appeal the defendant urged that the verdict was not justified by the evidence in that there was no warranty, and the court held: "The doctrine that a bargain and sale of a chattel of a particular description imports a contract or warranty that the article sold is of that description is sustained

by a great weight of authority [citing cases], and where a dealer sells an article, describing it by name, the identity of which is not known to the purchaser, he must understand that the latter relies upon the description as a representation by the seller that it is the thing described. * * * So on a sale of seed by name a warranty that the seed was of the kind named arises."

In this case the jury was instructed that the burden was upon the plaintiff to prove by a preponderance of the evidence that the defendants expressly warranted the wheat in question at the time of the sale to be bluestem spring seed wheat. It found for the plaintiff and thereby accepted as true his statement of the facts under which the purchase was made and was justified in so doing. The minds of the parties met upon the proposition that the defendants would sell to plaintiff, and plaintiff would purchase from them, bluestem spring seed wheat. That constituted their contract, and upon the principles announced in the foregoing authorities this constituted an express warranty by the defendants of the fact that the wheat was of the variety described.

Counsel for defendants cite and rely upon the case of *Kircher* v. *Conrad,* 9 Mont. 191, 18 Am. St. Rep. 731, 7 L. R. A. 471, 23 Pac. 74, to sustain their theory that the language used by defendant's agent Sannan at the time of the sale of the wheat did not amount to a warranty of kind. A comparison of the statements made by the vendor in that case with those made by Sannan in this case shows that they were very materially different. Here, according to plaintiff, the statements made by Sannan were a direct affirmation without any qualification or reservation whatever as to the kind of wheat which was sold, while in *Kircher* v. *Conrad* the court construed the language used by the vendor to mean only that he had received information from a third person, not a party to the suit, that the grain sold was of the variety which the vendee wanted to purchase.

2. Upon the measure of damages the court instructed the jury as follows: "(3) You are instructed that, if you find for [4] the plaintiff in this case, and find that the said wheat purchased by the plaintiff was worthless for the purpose for which it was bought, and that there was an express warranty by the said defendants relative to the said wheat, the measure of damages in the case should be: (1) The purchase price of the wheat in question; (2) a reasonable rental value of the land upon which it was sown for one year; (3) the reasonable value for the time and labor expended by the plaintiff in cultivating and preparing the ground for crop, and in sowing the seed therein; and (4) the reasonable value of hauling the seed wheat so purchased, from the elevator where it was obtained, to the fields where it was sown," and refused to give the defendants' requested instruction No. 4, which was as follows: "I further instruct you that the measure of damages in this case is the difference in value between the crops, if any, grown from the wheat so purchased, and the value of the crops that would have been grown and had, had the wheat been as represented, less the reasonable costs and charges of harvesting, gathering, threshing, and marketing."

The testimony in the case had disclosed that the plaintiff's crop on the land where the wheat in question was sown was a total failure; that he received no benefit whatever therefrom either from crops produced or from advantage to the land itself; and that he first discovered that the wheat sown was not spring wheat in the latter part of July, 1919.

There appear to be two different rules as to the measure of damages arising from a breach of warranty on the sale of seed. The two rules, however, are based upon entirely different fact conditions and are well stated in the case of *Ford* v. *Farmers' Exchange,* 136 Tenn. 287, L. R. A. 1917B, 1106, 189 S. W. 368, as follows: "There have been developed two rules in respect to damages growing out of the warranty of seed that proved not true to name. The first class of cases, deal-

ing with seed, improperly delivered under the contract, that are of such quality that no crop is produced, announce the restrictive rule that there is no proper basis for the allowance of expected profits as damages. The rule in such case appears to be that the items of damages recoverable are those of actual outlay, such as the price paid for the seed, the expenses of preparing the soil to receive the seed (less general benefit to the land therefrom), the expense of planting, and the loss sustained from having the land lie idle for such period of time as the use of it was lost. [Citing cases.] The other and more liberal rule is applied in cases where the defective seeds germinate and produce a crop that is inferior in quality and value to the one that would have been produced in the same circumstances had the seed been as warranted. *  *  * It is held that this basis is found in the certainly ascertainable value of the crop actually produced, the court having only to estimate the difference in value between that crop and the value of the crop that would ordinarily have been produced under the same circumstances if seed true to name had been supplied by the seller.''

In *Reiger* v. *Worth,* 127 N. C. 230, 80 Am. St. Rep. 798, 52 L. R. A. 362, 37 S. E. 217, the rule is laid down in substantially this language: Where a vendor guaranteed seed rice would grow, but it failed to do so, and its worthlessness was not discovered until too late to plant another crop, then the buyer's measure of damages is the amount paid for the rice, cost of preparing the soil, planting the rice, and annual rental value of the land.

In *Moorhead* v. *Minneapolis Seed Co.,* 139 Minn. 11, Ann. Cas. 1918E, 481, L. R. A. 1918C, 391, 165 N. W. 484, the rule is announced by the supreme court of that state in these words: ''Where there is a partial crop, or a crop of different variety than that promised by the warranty, the proper measure is the difference in value between the crop raised and the crop which would have been raised had the seed responded to the warranty. [Citing cases.] Where there has been no germi-

nation, it has been held that the damages should be measured by the cost of the seed, plus the cost of planting, plus the value of the use of the land, less any value in the use remaining at the time the seed failed to germinate.''

The facts in this case bring it within the first of the two rules mentioned in *Ford* v. *Farmers' Exchange, supra,* as well as the other authorities quoted, and our conclusion is that the court adopted the correct theory in the above instruction on the measure of damages. ·

The further objections to this instruction sought to be made [5] by defendants in this court cannot be considered, for the reason that they were not pointed out at the time of the settlement of the instructions in the lower court, as required by section 9349 of the Revised Codes of 1921. The only objection made to this instruction was as follows: ''Mr. Craven: We object to that on the ground that the measure of damages that should be given is stated in defendants' instruction No. 4.''

It has been repeatedly held by this court that under the above section a trial court is precluded from granting a new trial for error in any instruction not specifically pointed out at the time of settlement, and that this court cannot consider any error not so pointed out to the trial court.

3. The remaining specifications of error, 13 to 27, inclusive, [6] are all directed to certain evidence introduced by plaintiff regarding sales of seed wheat by defendants to persons other than the plaintiff.

The complaint alleged and the answer denied that defendants in connection with their milling business were engaged in buying and selling seed grain.

On his direct examination plaintiff was asked whether or not defendants had sold wheat to others than himself, stating that it was for seed, and, over an objection that it was immaterial and irrelevant, answered the question in the affirmative, and then, without objection on the part of the defendants, stated he had seen other farmers hauling grain

from defendants' mills—probably fifty bushels. Plaintiff's witness Owens testified without objection: "I know Mr. Sannan, the manager or agent of the mills at Bainville and had dealings with him in 1919. I bought seed myself that year for seed purposes."

Witness Sannan for defendants on his direct examination testified: "At no time in 1919 did we keep for sale at our elevator as a part of our business straight seed wheat proper. We never advertised or represented that we did so keep a straight seed wheat proper." He also testified that the only wheat which they had for sale during the times in question was ordinary elevator-run wheat. On cross-examination this witness was asked about sales of wheat made by him in the spring of 1919 to Grant Bakewell, John Sands, and Frank L. Walton, and, over objections, testified concerning the same. This line of examination is illustrated by the following extracts which are specified as errors 14 and 16, respectively:

(14) "Q. I will ask you, Mr. Sannan, if in the last part of April or the first part of May and at the mill of the defendants there, and in the presence of yourself and Mr. Grant Bakewell, of Bainville, you two parties were present, you didn't have a conversation with Mr. Bakewell in words or substance as follows: Mr. Bakewell stating to you, 'Have you any seed wheat for sale?' and you answered, 'Two kinds, Marquis and bluestem; which kind do you want?' Did you not have such a conversation?

"Mr. Craven: We object to that on the ground that it is attempting to go into collateral issues and evidently is asked for the purpose of impeachment upon collateral matters, and is incompetent and in no way tends to prove or disprove any of the issues in this case.

"The Court: I will overrule the objection. You may answer," and

(16) "Q. At the same time and place and the same parties present, I will ask you if, continuing talking in the same conversation, the following words, in effect or substance, were

not spoken: 'Mr. Bakewell: No; I can't tell if I do look at it; does any one else buy it for seed?' Your answer: 'Yes; Lundquist is hauling now; he has taken bluestem.' Was that spoken?''

Substantially the same inquiries were made concerning conversations and transactions with Sands and Walton.

In rebuttal plaintiff introduced Bakewell, Sands and Walton as witnesses, and they were allowed to give testimony contradictory of that elicited from Sannan on his cross-examination, over objection that the same was ''immaterial, irrelevant, and an attempt to impeach a witness on collateral matters.''

Under the issues as framed by the pleadings and the circumstances that the witness Sannan had testified that the defendants did not keep seed wheat for sale in the spring of 1919, and that the. only wheat they had on hand at the time in question was ordinary elevator-run wheat, it seems to us that it was competent for plaintiff to prove that defendants were in fact engaged in selling seed wheat, and that they had sold it to sundry and divers people. Proof of the fact that defendants were engaged in the business of selling seed wheat to people generally would have some tendency to support plaintiff's contention that they had sold seed wheat to him, which was one of the material facts in dispute. A very similar situation was presented in the case of *Moody* v. *Peirano,* 4 Cal. App. 411, 88 Pac. 380, and it was there decided that testimony similar to that above pointed out was properly received under circumstances such as here shown.

We have given consideration to all the matters presented, but find no error in the record, and therefore the judgment and order appealed from are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, HOLLOWAY and GALEN concur.