TRIPP, Respondent, v. SILVER DYKE MINING CO., Appellant.

(No. 5,386.)

(Submitted February 8, 1924.    Decided March 15, 1924.)

[224 Pac. 272.]

*Trespass—Mining Claims—Abandonment—Wrongful Cutting of Timber—Damages—Verdict—Reasonable Construction—Instructions—Law of Case—General Verdict—Effect—Appeal and Error.*

Appeal from Order Denying New Trial Abolished.
1. By section 9745, Revised Codes of 1921, the appeal from an order denying a new trial is abolished.

Appeal and Error—Instructions—Settlement—Failure to Object—Waiver of Error.
2. Failure of appellant to object to alleged erroneous instructions at the time of their settlement precludes review of specifications of error based thereon.

Mining Claims—Abandonment—Matter of Intention.
3. Abandonment of a mining location comprehends the intention to abandon, coupled with the act by which that intention is carried into effect.

Same—Abandonment—Presumptions—Burden of Proof.
4. Abandonment of a mining claim will not be presumed; it must be proven and the burden of proving it is upon the party who asserts it.

Same—Abandonment—Who may Assert.
5. Abandonment of a mining claim, in order to be available as a defense, must be claimed by a subsequent locator who is qualified to make a valid location.

Same—Abandonment—What Does not Constitute.
6. Where the locator of a mining claim, after it had been included in a new location made by another, purchased the ground, remained thereon, did the necessary representation work and asserted his ownership in good faith, he cannot be said to have abandoned the prior location, and the fact that the second locator located the ground as abandoned does not tend to prove that it was open to entry.

Same—Abandonment—When—Jury Question.
7. Unless the evidence touching the subject of abandonment of a mining claim is such that reasonable men cannot differ as to the conclusion to be drawn from it, the question of abandonment is one of fact for determination by the jury from all the surrounding circumstances.

6. Relocation of mining claim as abandoned or forfeited, see note in 68 L. R. A. 833.

[70 Mont. 120.]

Appeal and Error—Conflict in Evidence—When Verdict Conclusive.

8. Where the evidence was conflicting and the district court approved the verdict in an action for damages for trespass by denying a new trial, the supreme court will not interfere on appeal in the absence of a showing of abuse of discretion on the part of the trial court.

Mining Claims—Wrongful Cutting of Timber—Damages—Verdict Warranted by Evidence.

9. In an action to recover damages for the wrongful cutting of timber from a mining claim, shown by plaintiff to have been peculiarly adapted for mining purposes and available at the place of intended use, verdict for plaintiff *held* not excessive, as against the showing of defendant with relation to what like timber could be purchased from the National Forest, in the absence of evidence disclosing what it would cost to transport timber from the forest six or seven miles distant from the claim.

Verdict—Reasonable Construction to be Applied.

10. A verdict is not to be construed technically, but such a reasonable construction must be given it as will carry into effect the obvious intention of the jury, and to ascertain that intention reference may be had to the pleadings, the evidence and the instructions of the court.

Instructions not Objected to—Law of Case.

11. An instruction not objected to at the time of settlement of the instructions becomes the law of the case, binding upon the jury and conclusive upon the losing party.

Mining Claims—Wrongful Cutting of Timber—Treble Damages—Verdict —Construction.

12. In an action for trespass brought under section 8696, Revised Codes of 1921, to recover for timber wrongfully cut from a mining claim, where the evidence was sufficient to sustain a finding for $900 actual damages sustained, a general verdict for plaintiff for $2,700, reasonably construed in view of the instruction of the court that under section 8696 the jury could treble the damages if the trespass was willful, *held* in effect a finding that the actual detriment sustained was $900 and that the jury trebled the damages in the belief that the trespass was willful.

General Verdict—Effect.

13. A general verdict is a finding in favor of the successful party upon every material issue submitted.

*Appeal from District Court, Cascade County; J. B. Leslie, Judge.*

ACTION by W. F. Tripp against the Silver Dyke Mining Company. From a judgment for plaintiff and an order denying new trial defendant appeals. Appeal from order denying new trial dismissed and judgment affirmed.

---

9. Measure of damages for wrongful cutting or destruction of standing timber, see notes in 15 Ann. Cas. 916; Ann. Cas. 1912A, 919; 19 L. R. A. 653; 18 L. R. A. (n. s.) 244; 52 L. R. A. (n. s.) 91.

*Messrs. Cooper, Stephenson & Hoover,* for Appellant, submitted a brief; *Mr. Ransom Cooper* argued the cause orally.

*Messrs. Maddox & Church,* for Respondent, submitted a brief; *Mr. Fletcher Maddox* argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

In his complaint plaintiff alleges that he is, and at the date of the trespass was, the owner and in possession of the Flensburg and Flensburg No. 2 quartz lode mining claims; that in August, 1922, the defendant wrongfully entered upon the claims and willfully cut and removed therefrom 500 trees of the value of $2,500. The answer denies that plaintiff is or ever was the owner of either of the mining claims, and then sets forth that defendant is the owner of the Theodore Roosevelt claim, and that Thomas Westgard and his associates or successors in interest, not including the plaintiff, are the owners of the Chandler claim; that all of the trees cut and removed by defendant were from the Roosevelt claim excepting twelve or thirteen, which were inadvertently cut but not removed from the Chandler claim. The reply is in effect a general denial of all the new matter pleaded in the answer. The trial of the cause resulted in a judgment in favor of the plaintiff, [1] and defendant has appealed therefrom and has attempted to appeal from an order denying the motion for a new trial. The order is not appealable. (Sec. 9745, Rev. Codes 1921.)

Errors are predicated upon the giving of instructions 6, 8, 9 [2] and 13; but the record fails to disclose that defendant objected to any of the instructions at the time they were settled, and by express statute (sec. 9349) we are precluded from reviewing these alleged errors. (*Yergy* v. *Helena Light & Ry. Co.,* 39 Mont. 213, 18 Ann. Cas. 1201, 102 Pac. 310; *Poor* v. *Madison River Power Co.,* 41 Mont. 236, 108 Pac. 645; *Allen* v. *Bear Creek Coal Co.,* 43 Mont. 269, 115 Pac. 673; *Lundquist* v. *Jennison,* 66 Mont. 516, 214 Pac. 67.)

The Flensburg claim was located in 1886 by E. O. Bergh and Gust Damm, and an amended location was made in 1891. On June 11, 1902, John Lend located the New Flensburg claim, and on June 18, 1902, conveyed it to Bergh. Bergh located the Flensburg No. 2 claim in 1908. Damm died more than twenty years before this cause was tried. Bergh died in 1917, and in 1921 the administrator of his estate conveyed the Flensburg and Flensburg No. 2 claims to this plaintiff. The evidence fails to show that any of the trees were cut from the Flensburg No. 2 claim, so that plaintiff's right to recover in this action depends primarily upon his ownership of the Flensburg claim.

Defendant contends that Bergh did not have any interest in the Flensburg claim at the time of his death, hence the administrator's deed did not convey any interest to plaintiff. The only justification for this contention is found in the deductions which defendant makes from the record (a) that Bergh abandoned the Flensburg claim in 1902, or (b) if he did not, the claim was forfeited for failure to do the annual representation work for 1916.

It appears from their brief that counsel for defendant evolved the theory that after Damm's death Bergh conceived the notion that he would eliminate any claim which the heirs of Damm might have and secure the ground covered by the Flensburg claim for himself alone, and to that end procured Lend to locate the ground as the New Flensburg claim and then purchased that claim, thereby abandoning the original location. However attractive that theory may appear to defendant, it is lacking in one essential element: It is not supported by the evidence.

Upon the trial, which occurred late in May, 1923, plaintiff testified: "Gust Damm is dead. He has been dead for over twenty years." This is the only evidence touching upon the subject, and from it alone no one can say whether Damm died before or after Lend made his location on June 11, 1902. If the New Flensburg claim covers the same ground as the Flens-

burg claim, there would be some justification for the defendant's theory; but the only evidence reflecting upon the location of these claims is contained in the recorded notices, a contract and a deed. From these records we ascertain that the Flensburg claim lies south of Carpenter Creek, about one mile above the mouth of Snow Creek; that it extends northerly and southerly along the course of the vein; and that the adjoining claims are the Conway on the east and the Last Chance on the west. The New Flensburg is located about six miles north of Neihart. Its No. 4 corner is ten feet west of the mouth of Squaw Creek, a tributary of Carpenter Creek. It extends northwesterly and southeasterly along the course of the vein and the only adjoining claim is the Omaha on the northeast. Certainly there is not anything so far to indicate that the two claims are in the same immediate neighborhood, much less to show that their areas are identical or even in conflict.

The Flensburg No. 2 claim lies on the left-hand side of Carpenter Creek, about 1,500 feet from the creek and about one and a half miles above the mouth of Snow Creek. It extends in a northerly and southerly direction along the course of the vein, and the adjoining claims are the New Flensburg on the north and the Minneapolis on the east.

Considering the descriptions of the three claims together, we learn that the New Flensburg claim is about six miles north of Neihart and immediately north of the Flensburg No. 2, which latter claim is about half a mile above the Flensburg claim somewhere along the course of Carpenter Creek. Further than this the record furnishes us no information. Neither the description of the Chandler claim nor the description of the Roosevelt claim aids in the least, and from the descriptions above it would be the wildest guess to say that the New Flensburg claim includes any part of the ground covered by the Flensburg claim; and, if it does not, Bergh's purchase of the New Flensburg cannot raise any inference that by such act he intended to abandon the Flensburg claim.

But if we assume, as the trial court erroneously assumed in its instruction No. 5, that the New Flensburg claim includes all or a portion of the ground covered by the Flensburg claim, the question then arises: Was the jury justified in finding that Bergh did not abandon the original location? While the purchase from Lend would tend to indicate that it was Bergh's purpose thereafter to rely upon the title acquired by the purchase, it is not conclusive upon the question of abandonment, [3] for abandonment comprehends the intention to abandon, coupled with the act by which that intention is carried into effect. (*Bell* v. *Bed Rock T. & M. Co.*, 36 Cal. 214.) In *McKay* v. *McDougall*, 25 Mont. 258, 87 Am. St. Rep. 395, 64 Pac. 669, this court said: "Abandonment, as applied to mining claims held by location merely, takes place only when the locator voluntarily leaves his claim to be appropriated by the next comer, without any intention to retake or claim it again, and regardless of what may become of it in the future," and the language was quoted with approval in *Street* v. *Delta Mining Co.*, 42 Mont. 371, 112 Pac. 701.

It is a general rule that abandonment will not be presumed; [4, 5] it must be proved, and the burden of proof is upon the party who asserts it. Furthermore, abandonment, in order to be available, must be claimed by a subsequent locator who is qualified to make a valid location. (1 Snyder on Mines, sec. 513.)

Notwithstanding the purchase from Lend, if Bergh did not [6] intend to abandon the Flensburg location, but remained on the claim doing the necessary representation work and asserting his ownership in good faith, abandonment did not take place (*Omar* v. *Soper*, 11 Colo. 380, 7 Am. St. Rep. 246, 18 Pac. 443); and the fact, if it be a fact, that Lend located the ground as abandoned does not even tend to prove that it was open to entry. (*McGinnis* v. *Egbert*, 8 Colo. 41, 5 Pac. 652.)

Unless the evidence touching the subject is such that reason- [7] able men cannot differ as to the conclusion to be drawn from it, the question of abandonment is one of fact for de-

termination by the jury from all the surrounding circumstances. (1 Snyder on Mines, sec. 511.) Whether Lend was a qualified locator; whether Bergh connived at his location of the ground covered by the Flensburg claim; whether Bergh intended to abandon the Flensburg and carried that intention into effect— were questions properly directed to the jury. And in this · connection the court advised the jury that in determining whether Bergh abandoned the Flensburg claim they might take into consideration the evidence of Lend's location, of Bergh's purchase and of the treatment of the Flensburg thereafter by Bergh. But it is contended that Bergh's purchase from Lend is inexplicable upon any theory other than that advanced by defendant. While the record is silent as to the motive which prompted the transaction, it would appear as reasonable to say that the purchase was made to avoid litigation or to settle a dispute as to the ownership of the ground, as to say that it was done designedly to cheat and defraud the heirs of Bergh's colocator. From the record as it is presented, we think the jury might well find that defendant had not proved abandonment by a preponderance of the evidence, and the general verdict is subject to this interpretation.

Upon the question of forfeiture the utmost for which defend-
[8] ant can contend is that the evidence is conflicting. Plaintiff's witnesses testified that Bergh did the necessary representation work for 1916, while witnesses for defendant testified that he did not. The jury resolved the conflict in favor of the plaintiff, and the trial court approved the finding by denying a new trial. In the absence of any showing of abuse of discretion by the trial court, this court will not interfere. (*Love* v. *McDonnell*, 65 Mont. 482, 211 Pac. 211; *Rousselle* v. *Cramer*, 65 Mont. 537, 212 Pac. 294.)

Upon the question of the number and value of the trees re-
[9] moved by the defendant from the Flensburg claim the evidence likewise is conflicting. The testimony offered by the plaintiff would justify a finding that the actual detriment was $900 or more, while the evidence introduced by the defendant

as to the price for which like timber was sold by the National Forest Administration would tend to limit plaintiff's recovery to $125 or even less. However, defendant did not offer to show what it would cost to get timber from the National Forest to plaintiff's claim, but in rebuttal plaintiff testified that the nearest available timber of like character on the National Forest is six or seven miles from the Flensburg claim. The evidence does not disclose whether there are or are not roads leading to timber on the National Forest, but it does disclose that the trees cut and removed from the plaintiff's property were peculiarly adapted for use as mining timbers and were available at the place of intended use. Under these circumstances, it cannot be said that the jury was not warranted in accepting plaintiff's version of the extent of his damages.

The verdict returned reads as follows: ''We, the jury in the above-entitled action, find for the plaintiff and assess his damages at twenty-seven hundred dollars ($2,700).'' If this verdict is in effect a finding that $2,700 is the measure of **[10]** compensation for the actual detriment suffered by the plaintiff, there is merit to defendant's contention that the evidence does not warrant it. But a verdict is not to be construed technically; it is to be given such a reasonable construction as will carry into effect the obvious intention of the jury, and to ascertain that intention reference may be had to the pleadings, the evidence and the instructions of the court. (*Consolidated G. & S. Min. Co.* v. *Struthers*, 41 Mont. 565, 111 Pac. 152.) By its instruction No. 13 the court directed the **[11–13]** jury, if they found for the plaintiff, to determine the actual detriment suffered by him and then treble that amount as the damages to be written into the verdict, unless they found that the trespass was casual and involuntary or committed under the belief that the land from which the trees were removed belonged to defendant, in which event the verdict should be for the amount of actual detriment only. That instruction became the law of the case, binding upon the jury and conclusive upon the defendant, since it was not objected

to at the time of settlement. Viewed in the light of this instruction, the pleadings and the evidence the conclusion is irresistible that the jury found the actual detriment to be $900, and trebled that amount. Doubtless, if defendant had made a proper request, the court would have required the jury to find specially whether the trespass was casual and involuntary or was committed under the belief that the ground from which the trees were removed belonged to defendant; but, in the absence of such a request, defendant cannot now complain that the jury failed to make such finding specially. The general verdict is a finding in favor of plaintiff upon every material issue submitted and the evidence is ample to sustain it.

Finally, it is argued that unless the trespass was willful, the plaintiff was not entitled to recover treble damages; but this contention was waived by the failure to object to instruction No. 13 referred to above.

In passing, we may observe that counsel for defendant err in assuming that this action is brought under the provisions of section 9476, Revised Codes of 1921, a statute substantially the same as the one considered in *McDonald* v. *Montana Wood Co.,* 14 Mont. 88, 43 Am. St. Rep. 616, 35 Pac. 668. This action is predicated upon the provisions of section 8696, a statute materially different from section 9476, and one which was not in force in this state at the time the *McDonald Case* was decided.

We find no error in the record. The attempted appeal from the order denying a new trial is dismissed and the judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, GALEN and STARK concur.