FIRST NATIONAL BANK OF KALISPELL, Appellant, *v.*
PERRINE et al., Respondents.

(No. 7,175.)

(Submitted May 31, 1934.   Decided June 18, 1934.)

[33 Pac. (2d) 997.]

*Mr. John W. Coburn* and *Messrs. Foot, Aronson & Foot,* for Appellant, submitted a brief; *Mr. Eugene B. Foot* argued the cause orally.

*Mr. D. W. Doyle* and *Mr. S. J. Rigney,* for Respondent, sub-
mitted a brief and argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

This is an action in claim and delivery. Mary Perrine, one of the defendants herein, gave to the plaintiff bank certain chattel mortgages as security for loans which she had obtained from it. The mortgages covered certain sheep described by brands and all the sheep owned by her. On or about October 27, 1931, the mortgages being overdue and unpaid, plaintiff commenced foreclosure proceedings. At that time Mary Perrine claimed that 456 head of sheep, then in her possession, belonged to her children, Minnie Perrine and George Perrine, defendants herein. Because of this she refused to permit the sheriff to sell the 456 head of sheep. The sheriff sold 1,692

head of sheep, the balance in her possession, and the amount received therefor was credited to the mortgagor's indebtedness to plaintiff. This left a balance of $13,200 owing on the obligations.

Later, at the commencement of this action, plaintiff, claiming to be entitled to all of the 456 head of sheep which the sheriff had not been permitted to sell, seized 290 head and retained them, but thereafter, and at the time of the trial, had only a part of them, having sold some of them. In its complaint plaintiff alleges that it was entitled to the possession of the 456 head by virtue of the chattel mortgages executed by Mary Perrine, that she was in possession of the sheep, and that she wrongfully and unlawfully refused to permit the sheriff to sell them along with the rest of the band of which the 456 head were a part.

Defendants in their answer admit that Mary Perrine executed the mortgages to plaintiff and that they were due and unpaid. They allege that the 456 head of sheep in question were the property of the defendants George and Minnie Perrine, and that Mary Perrine had no right to mortgage them; that plaintiff had wrongfully and unlawfully withheld possession from defendants George and Minnie Perrine; that the present value of the sheep is $4,000; and that, since the taking by the plaintiff, the sheep had produced 5,400 pounds of wool worth $1,658, and 250 lambs worth $500, in which amounts they allege they have been further damaged. They pray for the return of the property, or for its value in the sums mentioned.

Trial was had to a jury, and a verdict was returned for the defendants George and Minnie Perrine. The verdict provided that defendants were entitled to a return of possession of the sheep, or, if a return could not be had, the value thereof fixed at the sum of $1,907.50. It further declared that defendants had been damaged by the unlawful detention of the sheep and by the taking of the wool and lambs produced therefrom, in the sum of $1,404.20. Judgment was entered in accordance

with the verdict. Plaintiff moved for a new trial, and the motion was denied. Hence the appeal.

Plaintiff predicates error upon the giving of instruction No. 3 to the jury, over objection. The instruction reads as follows: "You are instructed that if you find from the evidence herein that George Perrine and Minnie Perrine are the owners of the property involved in this action, then said defendants are entitled to a return of the 290 ewes and their lambs, seized by the sheriff in July, 1932, or in the event that said property cannot be returned, then the said defendants are entitled to the value of said property as of this date and it will be your duty if you find for the said defendants, to also find the value of said property as of this date." Plaintiff objected "upon the grounds and for the reasons that it fixes the value of the property involved as of the date of the time of the action, instead of the date of the commencement of the action."

At the outset we shall direct our attention to an alleged ambiguity in the objection just quoted. It appears, and plaintiff now contends, that the words "date of the commencement of the action" should have been "date of taking the property." It is also pointed out that the words "time of the action" should have been "time of the trial." Defendants insist that the objection is not sufficient, because instruction No. 3 fixed the time of the trial as the time at which the value of the property was to be found. They also argue that, in view of the position taken by plaintiff on this appeal (that the value of the property at the date of the taking controls), "the objection to the instruction on the ground that the value should be fixed as of the date of the commencement of the action is incorrect, and the district court cannot be put in error thereby."

This court has consistently adhered to the rule that "no ▆ cause shall be reversed by the supreme court for any error in instructions which was not specifically pointed out and excepted to at the settlement of the instructions." (*State* v. *Daly,* 77 Mont. 387, 250 Pac. 976, 978. See, also, section 9349, subd. 5, Rev. Codes 1921; *State* v. *Newman,* 66 Mont.

180, 213 Pac. 805; *Outlook Farmers' E. Co.* v. *American Surety Co.,* 70 Mont. 8, 223 Pac. 905; *Tripp* v. *Silver Dyke Min. Co.,* 70 Mont. 120, 224 Pac. 272; *Eablonski* v. *Close,* 70 Mont. 292, 225 Pac. 129.) We cannot, however, agree with defendants' contention that such rule is applicable in the present instance. Although the objection may not have stated the correct principles of law applicable to the case, nevertheless it is apparent that it did specifically point out the objectionable features contained in the instruction. We do not understand the rule to be that, in pointing out and excepting to the objectionable feature of an instruction, the party interposing the objection must necessarily also state the correct principle of law in order to avail himself of his objection on appeal. The party making the objection may himself be in error as to the law upon the point, but that fact should not destroy the force and effect of his objection if the instruction was actually erroneous in the particular mentioned.

We think that instruction No. 3 was erroneous, in that it ▮ fixed as the measure of damages recoverable the value of the property involved as of the date of the trial, rather than as of the time of its taking. This error was pointed out and objected to by plaintiff.

Defendants cite and rely upon section 9406, Revised Codes 1921, which provides as follows: "In an action to recover the possession of personal property, judgment for the plaintiff may be for the possession or the value thereof, in case a delivery cannot be had, and damages for the detention. If the property has been delivered to the plaintiff, and the defendant claim a return thereof, judgment for the defendant may be for a return of the property, or for the value thereof, in case a return cannot be had, and damages for taking and withholding the same." They argue that the only possible construction of this statute is that the value of the property must be fixed as of the time of the trial. We find, however, that the question has been definitely determined by a former decision of this court.

In the case of *Osmers* v. *Furey*, 32 Mont. 581, 81 Pac. 345, 348, the court said: "In claim and delivery the purpose is to obtain possession of the property, with damages for its detention. The value to be found by the jury which the plaintiff may recover, in case a redelivery cannot be had, is the market value at the time the taking occurred or the wrongful detention began." In 54 C. J. 615, it is said: "In some jurisdictions the view has been adopted that in replevin the value of the property is to be measured as of the time of the wrongful taking"—citing *Osmers* v. *Furey*, supra, and other cases. (See, also, 23 R. C. L. 914.)

Defendants assert that the rule laid down in the *Osmers Case*, supra, is not controlling here, for the reason that the statement made by the court upon this point is *dictum*. Though we concede that this question did not constitute the determinative issue of that case, still it appears that the court was dealing with an action in claim and delivery; hence the statement thus made by the court certainly was pertinent to the issues involved in the case. An examination of that case discloses the fact that the court announced the rule in question in a discussion relative to the admission of certain testimony concerning the value of the property in controversy. The admissibility of that testimony was one of the issues presented for the court's determination. Under the circumstances, we are unable to say that the rule is mere *dictum*. (See *Spratt* v. *Helena P. T. Co.*, 37 Mont. 60, 94 Pac. 631.)

In the case of *Webster* v. *Sherman*, 33 Mont. 448, 84 Pac. 878, 881, this court said: "Our Code does not define the measure of damages in a case of this character [claim and delivery action]; but, upon reason, it would appear to be analogous to the action in conversion, and that the rule applicable in such an action should be applied." Section 8689, Revised Codes 1921, provides for ascertaining damages in an action in conversion, as follows: "The value of the property at the time of its conversion, with the interest from that time; or, where the action has been prosecuted with reasonable diligence, the highest market value of the property at any time

between the conversion and the verdict, without interest, at the option of the injured party." It does not appear that any option was ever exercised (as prescribed in the above section) by defendants in this case. It is apparent that both defendants and the court were laboring under the mistaken theory that the value must be fixed as of the date of the trial, and at no other time. In accordance with the case of *Webster* v. *Sherman*, supra, it would seem to follow that the value should be fixed as of the time of the "conversion" of the property.

In Wells on Replevin, second edition, 468, it is said: "A large number of cases hold that the value at the time of the conversion, or at the time the delivery was refused, together with interest, is the proper rule. This question is exhaustively discussed in *Whitfield* v. *Whitfield*, 40 Miss. 352, where all the leading authorities on the subject are considered, and the court concludes its discussion: 'From the examination which we have been able to give to this question, we think that it may be safely affirmed: 1. That in actions for taking and detaining personal property, where no question of fraud, malice, oppression (or willful wrong, either in the taking or detention) intervenes, the measure of damages is the value of the property at the time of the taking, or conversion, or illegal detention, with interest thereon to the time of trial." This conclusion is well supported, not only by the rule laid down in *Osmers* v. *Furey*, supra, but also by cases from numerous other jurisdictions. (See *Benjamin* v. *Huston*, 16 S. D. 569, 94 N. W. 584; *McLeod* v. *Capehart*, 50 Minn. 101, 52 N. W. 381; *Morrison* v. *Montgomery*, 101 Kan. 670, 168 Pac. 674; *Tannahill* v. *Lydon*, 31 Idaho, 608, 173 Pac. 1146; *Buckley* v. *Buckley*, 12 Nev. 423.)

In this case the jury, in conformity with the court's instructions, fixed the value of the band of sheep as of the time of the trial, and also assessed as damages the value of the wool and lambs which had been produced from the flock originally taken by plaintiff. From these damages the plaintiff was allowed a deduction only for the cost of shearing the sheep.

The proper rule in this case would have been to fix the value of the original flock as of the time it was taken by plaintiff, plus the value of the increase, together with legal interest upon such values and the increase, respectively. The total of these values should then have been deducted from the total value of the entire flock and the wool produced at the time of the trial. From the difference remaining after this deduction had been made, the plaintiff was entitled to deduct his proper expenses for the care and support of the sheep, and their shearing. Whatever remained after the deduction of such expenses should have been awarded to the defendants. This amount, together with interest, would constitute defendants' entire damages for the taking and withholding of the sheep, or for the value of their use. There was no claim for, or proof of, any other element of damage.

We hold that the court erred in fixing the value of the original flock as of the time of the trial, rather than as of the date of the taking of the property. It is obvious that the value of the increase could not be fixed as of the date of taking, because the increase was not then in existence. That value, of necessity, must be fixed either as of the date of sale thereof, in case a sale was made, or, if not sold, as of the date of the trial.

It follows that the giving of instruction No. 3, over plaintiff's objection, did constitute reversible error.

Plaintiff's second and third specifications of error relate to the giving of instruction No. 4, over its objection, and the court's refusal to give plaintiff's requested instruction No. 1. Instruction No. 4, given by the court, reads as follows: "You are instructed that if you find for the defendants Minnie Perrine and George Perrine, then the said Minnie Perrine and George Perrine are entitled to the value of the wool and lambs produced from said sheep since the taking thereof by the sheriff of Glacier County, Montana, in July, 1932, but that in arriving at the amount of such damage, you should deduct from the value of the wool produced the cost of shearing said sheep not to exceed two cents per pound of wool." Plaintiff

objected to the instruction "upon the grounds and for the reasons that it confines the amount to be deducted from the damages or value to be recovered by the defendants to the cost of raising only, whereas plaintiff contends that there should be deducted from the value of the property, the sheep and lambs, the cost of maintaining them during the period of time intervening from the date of the seizure by the sheriff to the time of trial." (It is claimed that the word "raising" was used inadvertently instead of "shearing.") At the same time plaintiff requested the following instruction: "You are further instructed that if you find for the defendants for the return to them of the property in question, or its value, you shall in fixing a value deduct therefrom the reasonable cost to the plaintiff of caring for the sheep and lambs during the time they were in possession of plaintiff since July 6, 1933." The court refused to give this instruction, and overruled plaintiff's objection to instruction No. 4.

In view of what has already been said upon this subject in our discussion of instruction No. 3, the treatment of the present question can be quite brief.

The court was correct in refusing to grant plaintiff's requested instruction No. 1. That instruction provided that the plaintiff's expense in caring for the sheep should be deducted from the value of the sheep. Such expenses were properly deductible only from the value of the wool which had been produced by the sheep, and not from the value of the sheep. (*Buckley* v. *Buckley,* supra.) Plaintiff was entitled to deduct his expenses only from the gross earnings of the property. (*Haggerty Bros.* v. *Lash & Shaughnessy,* 34 Mont. 517, 87 Pac. 907; *Forsee* v. *Zenner,* (Mo. App.) 193 S. W. 975.)

Instruction No. 4, given, was also erroneous, and the plaintiff's objection to it should have been sustained. It limits plaintiff's expenses to the cost of shearing the sheep. Plaintiff was entitled to deduct from the value of the wool (or the gross earnings of the property) his "proper legitimate expenses in the care and support of the sheep, their shearing and the disposition of the wool." (*Buckley* v. *Buckley,* supra;

*Haggerty Bros.* **v.** *Lash & Shaughnessy,* supra; *Puckett* **v.** *Hopkins,* 63 Mont. 137, 206 Pac. 422; compare *Leigland* **v.** *Rundle, L. & A. Co.,* 64 Mont. 154, 208 Pac. 1075.)

Defendants suggest that there was no evidence upon which ▮ to base an instruction allowing plaintiff to deduct his expenses in the care and maintenance of the sheep, and the marketing of the wool. The record discloses the fact that there was some testimony at least as to the actual cost to plaintiff of caring for the sheep. The witness Schnell testified that such cost would approximate between $4.25 and $4.50 per head. There is also evidence from which the jury might have determined the number of sheep which were cared for by plaintiff. Under such circumstances, the question should have been submitted to the jury to decide what the plaintiff's expenses were in the care of the sheep.

Defendants also contend that the correctness of instruction No. 4 cannot now be passed upon by this court. This contention is based upon the fact that "the objection thereto made by the appellant [plaintiff] at the time of settling the instructions not only did not point out the defect in the instruction, but stated a rule which was not only erroneous but is not even contended for by the appellant now."

In conformity with the views expressed concerning a similar contention with respect to the objection interposed to instruction No. 3, we think the objection to instruction No. 4 did likewise sufficiently point out the defect in that instruction. The fact that plaintiff in making the objection contended for a rule which was also erroneous is immaterial.

For the reasons heretofore stated, it appears that there are errors of law which necessitate the reversal of judgment in this case and the granting of a new trial. Therefore it will not be necessary to discuss plaintiff's fourth and last specification of error "that the court erred in denying plaintiff's motion for a new trial on the ground of an award of excessive damages appearing to have been given under the influence of passion and prejudice, and that the evidence

is insufficient to justify the verdict, and that it was against law."

The judgment is reversed and the cause remanded, with direction to the district court to grant a new trial.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES ANGSTMAN, MATTHEWS and ANDERSON concur.

Rehearing denied July 7, 1934.