STATE, Appellant, *v.* TURSICH, Respondent.

No. 9335.

Submitted January 8, 1954. Decided March 5, 1954.

267 Pac. (2d) 641.

Mr. Chief Justice Adair concurred specially and Mr. Justices Anderson and Freebourn dissented.

Mr. Arnold H. Olsen, Atty. Gen., Mr. Hubert J. Massman, Asst. Atty. Gen., Mr. Gerald L. Crowley, County Atty., Helena, for appellant.

Mr. John W. Mahan, Mr. John W. Bonner, Helena, for respondent.

Mr. Massman, Mr. Bonner and Mr. Mahan argued orally.

MR. JUSTICE ANGSTMAN:

Defendant was accused by information of the crime of running and conducting a punch board whereby the players for a consideration might win a two-pound box of candy by chance.

Defendant's demurrer to the information was sustained. Judgment in favor of defendant dismissing the information was entered and plaintiff has appealed.

The information charges that defendant on April 10, 1953, "did wilfully, unlawfully, wrongfully, knowingly and intentionally keep, permit, run or conduct, or caused to be run or conducted, for money one punch board, such punch board being a device where the player pulls or punches a tab out of a card and pays the amount so indicated under each tab by number up to a maximum amount of 39¢ and a minimum of one cent per tab, * * * for the purpose of obtaining a chance to win a two-pound box of chocolate candy, of value unknown, at a certain place of business in the city of East Helena, Montana, to-wit: at the V. F. W. Club, in the City of East Helena, Montana."

The demurrer was on the following three grounds:

1. That the facts do not constitute a public offense;

2. That the information contains matters which, if true, would constitute a legal justification or excuse of the offense charged, or other legal bar to the prosecution;

3. "That the defendant has, at all times, been willing, and

is now willing, to abide by the laws of the State of Montana to pay for the operation of punch boards, but the responsible officials of the State of Montana have refused, and still refuse to accept payment of tax or otherwise for the operation of punch boards as provided for by the laws of the State of Montana.''

The judgment of the court was that the demurrer be sustained in all particulars.

The state contends that the information charges defendant with a violation of our statute defining lotteries, R. C. M. 1947, sec. 94-3001, as construed by this court in State v. Hahn, 105 Mont. 270, 72 Pac. (2d) 459, and State ex rel. Harrison v. Deniff, 127 Mont. 109, 245 Pac. (2d) 140, and therefore the contention that the information contains facts which constitute a legal justification or excuse and that defendant is willing to pay the tax for the operation of punch boards is not well taken, because it is not competent for the legislature to authorize lotteries in view of Article XIX, sec. 2, of our Constitution, and the case of State ex rel. Harrison v. Deniff, supra.

Defendant contends that the case is not ruled by R. C. M. 1947, sec. 94-3001, relating to lotteries, but is governed by R. C. M. 1947, sec. 94-2401, which purports to authorize the use of pull boards or ticket boards upon the payment of a license fee for the disposal of goods constituting the stock in trade of the operator, and that R. C. M. 1947, sec. 94-2403, exempts certain organizations from the provisions of the Act. It is his contention that he is exempted from the licensing feature of section 94-2401 because he runs the V. F. W. Club in East Helena and relies on the case of State ex rel. Replogle v. Joyland Club, 124 Mont. 122, 220 Pac. (2d) 988.

Defendant also relies on Chapter 201, Laws of 1951, R. C. M. 1947, sec. 84-5703 et seq., which on its face purports to authorize the use of punch boards as trade stimulators upon the purchase of a use tax stamp. He attempts to escape the ruling in State ex rel. Harrison v. Deniff upon the ground that what this court said in that case was dictum so far as it held R. C. M.

1947, secs. 84-5701 and 84-5702, unconstitutional because they had already been repealed by the 1951 legislature by Chapter 201. The difficulty with that contention is that sections 84-5701 and 84-5702 had not been repealed at the time the Deniff action arose and at the time the acts relied on in the Deniff case took place and at the time the judgment appealed from was entered. The acts in the Deniff case were alleged to have been committed on January 9, 1951. Judgment was rendered February 28, 1951. Chapter 201, Laws of 1951, which repealed R. C. M. 1947, secs. 84-5701 and 84-5702, was approved March 5, 1951, and because of R. C. M. 1947, sec. 43-507, was not effective until July 1, 1951. Likewise Chapter 201, Laws of 1951, while repealing R. C. M. 1947, secs. 84-5701 and 84-5702, re-enacted many of the repealed provisions and the rule is that the re-enacted provisions continued in force without interruption. It is stated in 50 Am. Jur., Statutes, sec. 576, p. 573, as follows: ''The general rule that where a statute is repealed, and all or some of its provisions are at the same time re-enacted, the re-enactment neutralizes the repeal, and the provisions of the repealed act which are thus re-enacted continue in force without interruption so that all rights and liabilities which have accrued thereunder are preserved and may be enforced, is applicable to legislation relating to crimes. Hence, where the statute repealed is re-enacted in substantially the same terms by an act which takes effect at the same time as the repealing act, it is continued in uninterrupted operation, and judgment may be rendered upon a conviction under it, though the offense was committed and prosecution commenced before the repeal.'' Our statute recognizes this rule. R. C. M. 1947, secs. 43-510 and 43-514.

Defendants in the Deniff case were relying on Chapter 298, Laws of 1947, being R. C. M. 1947, secs. 84-5701 and 84-5702, and the fact that those sections were repealed after defendants performed the acts complained of and after the judgment appealed from was entered, but before the decision by this court, does not render the decision of this court mere dictum. What was said in the Deniff case regarding Chapter 298, Laws of

1947, has equal application to Chapter 201, Laws of 1951. It is unconstitutional as an attempt to authorize lotteries. Compare also the recent case of State ex rel. Anderson v. Village of Garden City, Idaho, 265 Pac. (2d) 328. Likewise the absence of specifications of error in the Deniff case, as required by subsections c and d of subdivision 3 of Rule X of this court, does not make the court's opinion dictum. That rule is simply for the convenience and aid of the court in facilitating the labors of the court. It may be waived by the court in its discretion. That was done in the Deniff case.

In the Deniff case counsel in their brief did raise and argue the points of law discussed in the court's opinion, but through apparent inadvertence appellants' counsel omitted to make a formal statement of the specifications of error. The alleged errors however, were raised and discussed in the brief. The omission of specifications in the brief was a mark against the author but does not serve to characterize the court's opinion as dictum. The points of law there ruled on were involved, argued and discussed in the briefs and carefully considered by the court, and hence were not dictum. Helena Power Transmission Co. v. Spratt, 37 Mont. 60, 94 Pac. 631; Montana Horse Products Co. v. Great Northern R. Co., 91 Mont. 194, 7 Pac. (2d) 919; First National Bank of Kalispell v. Perrine, 97 Mont. 262, 33 Pac. (2d) 997; Bottomly v. Ford, 117 Mont. 160, 157 Pac. (2d) 108.

The ruling in the Deniff case likewise applies to R. C. M. 1947, sec. 94-2401, so far as that statute attempts to authorize pull boards and ticket boards as a means of distributing property by chance for a consideration as here. It is true that in the Deniff case mention was made of the existence of a "widespread pestilence" which is not shown to exist here. So far as that feature of the case is concerned, the better view is to condemn the lottery as such regardless of its widespread distribution or pestilence as did the Idaho Supreme Court in State ex rel. Anderson v. Village of Garden City, supra, and the other courts in the cases therein cited. Hence defendant's position would

be no better were the information expressly based on section 94-2401, supra.

We agree, however, with the contention of the state that the ▮ information is sufficient to state an offense under R. C. M. 1947, sec. 94-3001, when the information is considered in the light of the requirements of R. C. M. 1947, sec. 94-6412, and R. C. M. 1947, sec. 94-6403.

In 27 Am. Jur., Indictments & Informations, sec. 99, p. 659, it is said: ''An indictment which properly charges an offense under a statute is good, although the offense charged is not the one which the prosecuting attorney had in mind when he drew the indictment * * *''. To the same effect is Capone v. United States, 7 Cir., 51 F. (2d) 609, 76 A. L. R. 1534.

The court erred in sustaining the demurrer to the information.

Finally defendant contends that the State of Montana through ▮ the attorney general has no right to question the constitutionality of the statute here in question. He relies principally upon the Florida case of State ex rel. Atlantic Coast Line R. Co. v. State Board of Equalizers, 84 Fla. 592, 94 So. 681, 30 A. L. R. 362. We are not impressed with the reasoning employed in the opinion in that case. It is, of course, fundamental that only those who are adversely affected by a statute will be heard to question its validity. That rule is well established. Chovanak v. Matthews, 120 Mont. 520, 188 Pac. (2d) 582, and cases cited therein.

The attorney general is the chief law enforcement officer of the state. He and the several county attorneys represent the state in all criminal prosecutions. The State of Montana is the party questioning the validity of the statute in question here and the attorney general and the county attorney are the attorneys representing the state. This is not a case where the attorney general is declaring an act unconstitutional, but he is the one representing the state in placing the question before the court for determination.

We hold that the state has a sufficient interest in laws relating to crimes and in a statute purporting to authorize lotteries to

question its validity and that the attorney general and the county attorney are the proper persons to represent the state in such proceedings. Compare State v. Watkins, 176 La. 837, 147 So. 8, and State ex rel. Evans v. Brotherhood of Friends, 41 Wash. (2d) 133, 247 Pac. (2d) 787.

The judgment is reversed and the cause remanded with directions to set aside the order sustaining and to enter an order overruling the demurrer to the information and to further proceed in accordance with the views herein stated.

MR. JUSTICE BOTTOMLY, concurs.

MR. CHIEF JUSTICE ADAIR: (specially concurring in result).

While I do not agree with all that is said in the foregoing opinion I concur in the disposition therein made of the appeal.

The facts stated in the information constitute a public offense under the statutes of this state, hence defendant's demurrer thereto should have been overruled and defendant should have been ordered to plead to the information.

In Montana the people have withheld from their state
[1] tive assembly the "power to authorize lotteries, or gift enterprises for any purpose". Mont. Const. Art. XIX, sec. 2, clause 1.

Idaho's Constitution provides: "The legislature shall not authorize any lottery or gift enterprise under any pretense or for any purpose whatever." Idaho Const. Art. III, sec. 20.

Montana's Constitution also contains the express mandate that the state legislative assembly "shall pass laws to prohibit the sale of lottery or gift enterprise tickets in this state." Art. XIX, sec. 2, clause 2.

In compliance with the above express mandate the state legislative assembly enacted R. C. M. 1947, secs. 94-3001 to 94-3011, inclusive.

A lottery is defined by section 94-3001 of the Revised Codes

of Montana of 1947 and the same definition appears as section 18-4901 of the Idaho Codes.

In the well considered case of State ex rel. Anderson v. Village of Garden City, Idaho, 265 Pac. (2d) 328, 330, decided December 23, 1953, the Supreme Court of Idaho determined the law points and questions which are here involved and I quote therefrom with approval. There, after quoting the legislative definition of a lottery appearing in section 18-4901, I. C., the Idaho court said:

"This definition in substance conforms to that of the common law which has defined a lottery as a species of gaming, wherein prizes are distributed by chance among persons paying a consideration for the chance to win; a game of hazard in which sums are paid for the chance to obtain a larger value in money or articles.

"All lotteries are gambling. To constitute a lottery, as distinguished from other methods or forms of gambling, it is generally held there are three essential elements, namely, chance, consideration and prize. When these three elements are present, the scheme is a lottery. 54 C. J. S., Lotteries, sec. 2(a), p. 845; 34 Am. Jur. 647, sec. 3. * * *

"The definitions above quoted and contained in the acts by which the Legislature attempted to legalize slot machines, designated as coin-operated amusement devices, punchboards, chance spindles and chance prize games, when analyzed, simply define lotteries by other names, and the parts of the acts which define the various devices as gaming and not lotteries, are of no importance. While the acts herein asserted by appellants to be constitutional are adriotly and cleverly drawn, the fact remains that the instrumentalities and devices so defined and permitted are no more nor less than lotteries. The Legislature cannot amend or repeal the constitution, or any part of it, by legislative act, nor interpret it. Under prescribed procedure the constitution may be amended by the electors of the State, not otherwise. Art. 20, sec. 1 of the Constitution. The interpretation of the constitution is a matter for the courts to determine; and desig-

nating the devices complained of by other names than lotteries does not change the essential characteristics of the contrivances attempted to be legalized by stating that they are gambling devices and not lotteries. A lottery is a well recognized evil and mischief regardless of the name it may be called, or the manner in which it operates. The fact that the name of a gambling device may be changed or new forms of games invented, probably never seen nor heard of by the framers of the constitution, does not change the law. All such similar contrivances and devices, by whatever name they may be called, or however operated, in a vast majority of cases submitted to the courts of last resort have been held to be lotteries, and where the constitution of a particular state prohibits lotteries, such pretended licensing of similar devices and schemes has been declared unconstitutional. Thus in State ex rel. Evans v. Brotherhood of Friends, 41 Wash. (2d) 133, 247 Pac. (2d) 787, 788, a statute legalizing the operation of slot machines under prescribed conditions was attacked as unconstitutional and in violation of a provision in the Washington Constitution, Art. 2, sec. 24, which provides: 'The legislature shall never authorize any lottery * * *', the Supreme Court of Washington held that slot machines are mechanical lotteries and said:

" 'The statutory provision, exempting non-profit, benevolent, educational, fraternal, athletic or social clubs from provisions of statute penalizing possession, use or operation of slot machines as felony, is unconstitutional as authorizing lottery.' * * *

"What has been said relative to slot machines or mechanical amusement devices, so called, in the act attempting to legalize the same, applies equally to punchboards, chance spindles and chance prize games. These latter contrivances, schemes, and devices, by whatever name they may be called or known, or however operated, have been held to be lotteries in numerous decisions in courts of last resort. [Citing cases.]

"It therefore follows that slot machines, mechanical amusement devices, punchboards, chance spindles, chance prize games, as defined in the acts attempting to legalize them, and all other

similar contrivances, devices and schemes are lotteries, and any legislative act authorizing, or attempting to authorize their operation in any manner, is unconstitutional, being prohibited by Art. 3, sec. 20, of the Idaho Constitution.

"We therefore conclude that the acts of the Legislature above referred to, attempting to legalize their operation, are unconstitutional and void. * * *

"It is claimed that the State accepted a license fee to operate the devices in question, hence the right to operate them cannot be challenged in the manner done. The fact that a license fee was accepted, if it was, is no defense. Payment of taxes on, or license for a gambling machine or device furnishes no justification for its operation in violation of the constitution or the anti-gambling laws. [Citing case.]

"An unconstitutional act is not a law. Hence the statutes here attacked, being unconstitutional, the appellants cannot successfully contend that the nuisance complained of was carried on under authority of the State, or that such devices were operated under authority of the provisions of an ordinance of Garden City. State v. Frederic, 28 Idaho 709, 155 Pac. 977.

"All the people of the State are bound by constitutional limitations and Art. 3, sec. 20 of the Constitution is, with the other provisions, the supreme law of the land. [Citing cases.] Hence there is no valid statute or ordinance authorizing the businesses in which the appellants were engaged, and here complained of. * * *

"Appellants contend that the policy-making body of the State is the Legislature and not the courts. The public policy of the State relative to the licensing or operation of lotteries was fixed by the framers of the Constitution. The constitutional inhibition, Art. 3, sec. 20 of the Constitution, cannot be modified or changed by the Legislature. The public policy of legislative enactments cannot be questioned by the courts and avoided simply because the courts might not agree with the public policy so announced. It is the duty of officials who act under a valid legislative enactment to abide by its terms. It is the court's duty

to interpret the meaning of legislative enactments without regard to possible results. [Citing cases.] The determination and announcing of the public policy of the State by the Legislature, within its sphere, does not empower the Legislature to pass unconstitutional acts. * * *

"This provision of the Constitution, Art. 3, sec. 20, is negative and prohibitory, is self-acting and needs no legislation to carry it into effect, and it cannot be annulled in the manner attempted."

It was reversible error for the trial judge to sustain defendant's demurrer to the information and to render and cause to be entered a judgment of dismissal.

MR. JUSTICE FREEBOURN, dissents.

MR. JUSTICE ANDERSON: (dissenting).

Less than two years ago this court said that the constitutional prohibition against lotteries meant that the legislature could not authorize *"widespread pestilent lotteries."* State ex rel. Harrison v. Deniff, 127 Mont. 109, 245 Pac. (2d) 140.

In the case now before it, this court announces the rule to be that "the better view is to condemn the lottery as such regardless of its widespread distribution or pestilence."

The defendant, Mr. Michael Tursich, admitted by the state to be an attendant at a Veterans of Foreign Wars Club in East Helena, Montana, had a right to rely upon the ruling made by this court in the earlier case because there is no pleading which suggests a widespread distribution or pestilence.

How it could be expected of Mr. Tursich to know what this court now thinks the constitutional framers meant when apparently the judges themselves did not know until the ruling was made in the instant case is somewhat beyond ordinary comprehension. Anyone, including the defendant, had a right to proceed under the former ruling.

Here the defendant, in effect, was charged with a crime apparently under a prior ruling of this court and now is forced to proceed to trial under an entirely different one. This practice

seems to me to suggest a violation of the spirit, if not the letter, of both the Constitution of the United States and the State of Montana which provide that no ex post factor law shall be passed.

I think under the doctrine of stare decisis the lower court was right in sustaining the demurrer and entering judgment of dismissal insofar as the defendant is concerned.